UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA <u>ex rel.</u> ERIN HAYES LUPO,<br><br>         Plaintiff,<br><br>v.<br><br>QUALITY ASSURANCE SERVICES, INC., an entity; GLENN RUSSELL DEACON II, an individual; GLENN RUSSELL DEACON, an individual; SUSAN DEACON, an individual; and SHELLY BECKER, an individual,<br><br>         Defendants. | Case No.: 16cv737 JM (JMA)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF/RELATOR'S FIRST AMENDED COMPLAINT** |

  Defendants Quality Assurance Services, Inc. ("QAS"), Glenn Russell Deacon, Glenn Russell Deacon II, Susan Deacon, and Shelly Becker (collectively, "Defendants") move the court to dismiss the first amended complaint ("FAC") of Relator Erin Hayes Lupo for failure to state a claim. (Doc. No. 18.) Relator opposes the motion. (Doc. No. 19.) The court finds the matter appropriate for decision without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the following reasons, the court grants the motion in part and denies the motion in part.

1

16cv737 JM (JMA)

# BACKGROUND

QAS is a California corporation that contracts to perform inspections and diagnostic testing on medical equipment for hospitals and other health care providers. (Doc. No. 13 ¶¶ 6, 17.) The individual defendants are all shareholders of QAS. (Id. ¶¶ 7–10.) Relator worked at QAS for approximately eight years, including as office manager. (Id. ¶¶ 5, 12.)

On September 16, 2016, Relator filed the FAC, alleging six counts: (1) substantive violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1); (2) conspiracy to violate the FCA, id. § 3729(a)(3); (3) retaliation in violation of the FCA, id. § 3730(h); (4) retaliation in violation of California Labor Code section 1102.5 ("section 1102.5"); (5) retaliation in violation of California Labor Code section 232.5 ("section 232.5"); and (6) wrongful termination in violation of California public policy. (See generally Doc. No. 13.) All six counts stem from allegations that Defendants falsified medical device inspection reports, which caused the submission of false claims to the government, and that QAS terminated Relator for exposing that activity.

# LEGAL STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of the pleadings. Generally, to overcome such a motion, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Facts merely consistent with a defendant's liability are insufficient to survive a motion to dismiss because they establish only that the allegations are possible rather than plausible. Id. at 678–79. The court must accept as true the facts alleged in a well-pleaded complaint, but mere legal conclusions are not entitled to an assumption of truth. Id. The court must construe the pleading in the light most favorable to the non-moving party. Concha v. London, 62 F.3d 1493, 1500 (9th Cir. 1995).

A heightened pleading standard governs FCA claims, however. <u>United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.</u>, 637 F.3d 1047, 1054 (9th Cir. 2011). That heightened standard, provided by Federal Rule of Civil Procedure 9(b), requires that the complaint "state with particularity the circumstances constituting fraud or mistake," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." "Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal ellipsis omitted). To satisfy Rule 9(b), "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." <u>Id.</u> (quoting <u>Cooper v. Pickett</u>, 137 F.3d 616, 627 (9th Cir. 1997)).

## DISCUSSION

The court will address each count in the FAC in the order Relator presents them, and then Relator's claim for punitive damages.

### 1. Violation of the FCA

The primary source of FCA liability arises under 31 U.S.C. § 3729(a)(1)(A),[1] which prohibits submission of false or fraudulent claims to the United States. This subsection imposes liability upon a person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval[.]" The next subsection, (a)(1)(B), imposes liability for knowingly making, using, or causing to be made or used, a

---

[1] The court notes that Relator appears to have cited the previous version of the FCA in the FAC. Because the substance of the provisions with respect to the allegations in this case remain the same after the 2009 revisions to the law, the court interprets Relator's allegations under subsections (a)(1), (a)(2), and (a)(7) as alleging violations of the equivalent current sections (a)(1)(A), (a)(1)(B), and (a)(1)(G), respectively. <u>See</u> 31 U.S.C. § 3729; Pub. L. No. 111-21 § 4(a) (May 20, 2009), 123 Stat. 1621.

false record or statement that is material to a false or fraudulent claim.[2] The difference between subsections (a)(1)(A) and (a)(1)(B) "is that the former imposes liability for presenting a false claim, while the latter imposes liability for using a false record or statement to get a false claim paid." Jana, Inc. v. United States, 34 Fed. Cl. 447, 449 (1995).

Thus, to state a claim under subsection (a)(1)(A), Relator must show: "(1) a false or fraudulent claim (2) that was material to the decision-making process (3) which defendant presented, or caused to be presented, to the United States for payment or approval (4) with knowledge that the claim was false or fraudulent." Hooper v. Lockheed Martin Corp., 688 F.3d 1037, 1047 (9th Cir. 2012). To state a claim under subsection (a)(1)(B), Relator must show that Defendants "knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim." Id.

In moving to dismiss the FAC, Defendants focus on Relator's failure to identify any actual claims made to the government. Defendants quote the Ninth Circuit's observation in United States ex rel. Aflatooni v. Kitsap Physicians Serv., 314 F.3d 995, 997 (9th Cir. 2002), that "[i]t seems to be a fairly obvious notion that a False Claims Act suit ought to require a false claim." At the summary judgment stage, as was the case in

---

[2] Given the "causes to be" language in both subsections, courts have held that the "FCA reaches 'any person who knowingly assisted in causing the government to pay claims which were grounded in fraud, without regard to whether that person had direct contractual relations with the government.' Thus, a person need not be the one who actually submitted the claim forms in order to be liable." United States v. Mackby, 261 F.3d 821, 827 (9th Cir. 2001) (quoting United States ex rel. Marcus v. Hess, 317 U.S. 537, 544–45 (1943)). Here, Relator alleges that Defendants test and provide reports on equipment that is used to diagnose and treat patients. That treatment is then paid for by the government in the form of Medicare, Medicaid, MediCal, or Tri-Care. In other words, Defendants submitted fraudulent reports which hospitals relied on to make (false, as a result of Defendants' conduct) claims to the government for reimbursement. (See Doc. No. 13 ¶¶ 17, 21.)

Aflatooni, that may indeed be an obvious notion. At the pleading stage, it is less obvious. In fact, as Defendants acknowledge, the Ninth Circuit has held "that it is sufficient to allege particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." Ebeid ex rel. United States v. Lungwitz, 616 F.3d 993, 998–99 (9th Cir. 2010) (internal quotations omitted).

The FAC, even if not artfully drafted, meets Ebeid's requirements. First, Relator alleges particular details of a scheme: rather than properly test medical equipment, Defendants produced reports on the performance of medical equipment using falsified data and provided those reports to various health care providers, including government-run institutions. Second, there is convincing reason to infer that this alleged scheme caused claims to be submitted to the government: the various health care providers used the equipment to treat patients and sought reimbursement for that treatment via claims to the government for Medicare and Medicaid funds; but the government would not have made those payments had it known the treatment was rendered on improperly tested and uncertified medical equipment. Through this process, false claims for payment were submitted.[3]

The court finds that, in alleging this activity, the FAC satisfies the stated purposes of Rule 9(b)—giving Defendants "notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." Vess, 317 F.3d at 1106. Relator claims that on numerous occasions, but at minimum on January 15, 2016 (when), Glenn Russell Deacon II, through his employment at QAS

---

[3] Specifically, Relator alleges that "Defendant Glenn Russell Deacon II has, on numerous occasions, created false, fraudulent reports, and submitted them to the California State Government for payment, as well as hospitals and other medical care providers in return for payment, which payment is funded, in part, by the government through Medicare, Medicaid, MediCal, and Tri-Care." (Doc. No. 13 ¶ 21.) In support, Relator attaches two identical reports generated on different equipment, which she claims is "statistically impossible"—a fact the court accepts as true at this stage of the litigation.

(who and where), generated fraudulent reports that were not based on actual testing done (what), which were provided to health care providers, which were then used to garner improper government payments (how).  This recitation makes clear what wrongs Relator believes Glenn Russell Deacon II (and QAS) committed, and the manner in which those wrongs were committed.  At this point in the case, the specific manner in which reports were delivered to the health care providers and then incorporated into false claims is less important.

Thus, while Relator undoubtedly will be required to offer more as this case advances, possibly including, as Defendants suggest, "what programs were at issue, which forms were used to submit allegedly false claims, what false statements or certifications (if any) were made in support of any claim, and who submitted the claim or made the false certifications," (id. at 11), the court finds that she has satisfied her burden at the pleading stage with regard to QAS and Glenn Russell Deacon II.

The court agrees with Defendants, however, that Relator has failed to state facts demonstrating how the other individual defendants participated in the scheme.  Instead, Relator merely claims that the other defendants "were aware of Glenn Russell Deacon II's fraudulent practices."  (Doc. No. 13 ¶¶ 25–26.)  "This is not sufficient to put each individual [d]efendant on notice of their alleged role in a fraudulent scheme as required by the particularity requirements of the FCA."  (Doc. No. 18-1 at 12.)  Accordingly, the court grants Defendants' motion, with leave to amend, as to Glenn Russell Deacon, Susan Deacon, and Shelly Becker, but denies it as to QAS and Glenn Russell Deacon II.

        **2.**    **Conspiracy to Violate the FCA**

In Count II, Relator alleges that, through the acts described, Defendants entered into a conspiracy "among themselves" and with unnamed others to defraud the government in violation of the FCA.  In moving to dismiss this count, Defendants make two points.

First, Defendants argue the intracorporate conspiracy doctrine bars Relator's allegation as to a conspiracy "among themselves."  The intracorporate conspiracy

doctrine, derived from antitrust law, holds that a conspiracy requires "an agreement among two or more persons or distinct business entities." United States v. Hughes Aircraft Co., 20 F.3d 974, 979 (9th Cir. 1994), as amended (Apr. 28, 1994).  "The logic for the doctrine comes directly from the definition of a conspiracy." Hoefer v. Fluor Daniel, Inc., 92 F. Supp. 2d 1055, 1057 (C.D. Cal. 2000).  "It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy. 'A corporation cannot conspire with itself anymore than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation.'" Id. (quoting Nelson Radio & Supply Co. v. Motorola, Inc., 200 F.2d 911, 914 (5th Cir.1952)).

Though the Ninth Circuit has not spoken on the issue, a number of district courts, including those within the Ninth Circuit, have applied the intracorporate conspiracy doctrine to FCA claims. See, e.g., United States ex rel. Huey v. Summit Healthcare Ass'n, Inc., 2011 WL 814898, at *6–7 (D. Ariz. Mar. 3, 2011) (applying doctrine and distinguishing FCA cases from criminal conspiracies); United States ex rel. Fago v. M&T Mortgage Corp., 518 F. Supp. 2d 108, 117–18 (D.D.C. 2007) (finding that corporation cannot conspire with its employees and defendant therefore entitled to judgment as a matter of law on conspiracy claim); United States v. EER Sys. Corp., 950 F.Supp. 130, 132–33 (D. Md. 1996) (dismissing conspiracy claim under FCA where plaintiff did not allege exception to established rule that a corporation cannot conspire with its officers or agents); United States ex rel. Fent v. L-3 Comm. Aero Tech LLC, 2007 WL 3283689, at *5 (N.D. Okla. Nov. 2, 2007) (applying doctrine to FCA claim); United States v. Berkeley Heartlab, Inc., 2016 WL 7851459, at *17 (D.S.C. Mar. 28, 2016) (same).

While Defendants cite a number of these cases in their motion, Relator does not cite a single instance in which a court refused to apply the doctrine to an FCA case.  The court's own research also failed to turn up such a case.  Accordingly, the court follows the many other cases that have applied the intracorporate conspiracy doctrine to FCA claims.

Second, Defendants argue that Relator did not adequately allege that QAS

conspired with any separate and independent individual or entity. The court agrees. Relator does not identify which defendant entered into an unlawful agreement on behalf of QAS with an outside individual, the identity of that outside individual, the agreement that was reached, or when, where, or how it happened. That does not meet any federal pleading standard, heightened or not. Cf. Claire M. Sylvia, The False Claims Act: Fraud Against the Government, § 10:65 (2016) (discussing disagreement among courts regarding whether Rule 9(b) applies to FCA conspiracy claims).

For these reasons, the court dismisses Count II. The court denies Relator leave to amend her allegation that Defendants conspired among themselves, as that claim is barred by the intracorporate conspiracy doctrine and therefore futile. See Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir.1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend."). The court grants Relator leave to amend, if appropriate, as to outside entities.

### 3.     Retaliation in Violation of the FCA

Count III alleges retaliation in violation of the FCA. Unlike a claim for violation of the FCA, a claim for retaliation under the FCA "does not require a showing of fraud and therefore need not meet the heightened pleading requirements of Rule 9(b)." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1103 (9th Cir. 2008).

"Congress added 31 U.S.C. § 3730(h) to the FCA in 1986 to protect 'whistleblowers,' those who come forward with evidence their employer is defrauding the government, from retaliation by their employer." U.S. ex rel. Hopper v. Anton, 91 F.3d 1261, 1269 (9th Cir. 1996). The statute provides that employees "shall be entitled to all relief necessary" to make them whole if they are "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter." 31 U.S.C. § 3730(h)(1).

To sustain an FCA retaliation claim, "(1) the employee must have been engaging

in conduct protected under the Act; (2) the employer must have known that the employee was engaging in such conduct; and (3) the employer must have discriminated against the employee because of her protected conduct." Hopper, 91 F.3d at 1269.  Regarding the first element, "specific awareness of the FCA is not required, but [Relator] must be investigating matters which are calculated, or reasonably could lead, to a viable FCA action." Moore v. California Inst. of Tech. Jet Propulsion Lab., 275 F.3d 838, 845 (9th Cir. 2002) (internal quotations and alterations omitted).

For the reasons set forth above, the court finds that Defendants' alleged scheme could reasonably lead to a viable FCA action.  And Relator was not required to specifically communicate an intention to bring an FCA action; section 3730(h) protects other steps, as well, including internal reporting.  See id.; Mendiondo, 521 F.3d at 1104; 155 Cong. Rec. E1295, E1300 (daily ed. June 3, 2009) (extension of remarks) (statement of Cong. Berman) (stating that the 2009 amendments make "clear that this subsection protects not only steps taken in furtherance of a potential or actual qui tam action, but also steps taken to remedy the misconduct through methods such as internal reporting to a supervisor or company compliance department and refusals to participate in the misconduct").  Therefore, Relator has pled the first element.

Next, Relator alleges that she made complaints about Glenn Russell Deacon II's practices to other defendants.  (Doc. No. 13 ¶ 25.)  More specifically, Relator alleges that she showed Susan Deacon two identical reports generated by two separate pieces of equipment, which demonstrated the fraudulent nature of the activity.  (Id. ¶ 26.)  Therefore, Relator has pled the second element.

Finally, Relator alleges that two days after showing those reports to Susan Deacon, she was fired.  "It suffices at this pleading stage . . . to simply give notice that she believes [QAS] terminated her because of her investigation into the practices she specified in the complaint." Mendiondo, 521 F.3d at 1104 (citing Edwards v. Marin Park, Inc., 356 F.3d 1058, 1061 (9th Cir. 2004), which noted that discovery is "often necessary to uncover a trail of evidence regarding the defendants' intent in undertaking

allegedly discriminatory action"). Therefore, Relator has pled the third element. As a result, she has stated a claim that QAS retaliated against her in violation of the FCA.

But Relator's claim against the individual defendants on this count must be dismissed. Prior to its amendment in 2009, the FCA prohibited retaliatory conduct against an employee "by his or her employer" only. Congress eliminated that language in 2009, but courts have since determined that the amendment was meant only to broaden the category of employee eligible for whistleblower protection (to include contractors and agents), not to broaden the class of persons subject to liability under the provision. See, e.g., Wichansky v. Zowine, 2014 WL 289924, at *3–5 (D. Ariz. Jan. 24, 2014); Lipka v. Advantage Health Grp., Inc., 2013 WL 5304013, at *12 (D. Kan. Sept. 20, 2013).

As noted by the court in United States v. Kiewit Pacific Company, 41 F. Supp. 3d 796 (N.D. Cal. 2014), "by necessity the statute could no longer refer only to 'employers' since it would apply to entities which had an independent contractor or agency relationship with persons subject to the Act. It is this reason that likely led Congress to remove the 'employer' language." Id. at 813 (citing United States ex rel. Abou–Hussein v. Sci. Applications Int'l Corp., 2012 WL 6892716, at *3 n.4 (D.S.C. May 3, 2012) aff'd, 475 Fed. App'x. 851 (4th Cir. 2012)). And indeed, before the amendment, courts had consistently held that the use of the term "employer" prohibited liability against individuals who were not employers of the whistleblower. See, e.g., United States ex rel. Siewick v. Jamieson Sci. & Eng'g, Inc., 322 F.3d 738, 739 (D.C. Cir. 2003); United States ex rel. Golden v. Arkansas Game & Fish Comm'n, 333 F.3d 867, 871 (8th Cir. 2003).

Given this authority, the court concludes that the individual defendants cannot be liable for retaliation in violation of the FCA. Consequently, the court denies Defendants' motion to dismiss Count III as to QAS, but grants it, without leave to amend, as to Glenn Russell Deacon, Glenn Russell Deacon II, Susan Deacon, and Shelly Becker.

### 4. Retaliation in Violation of California Labor Code section 1102.5

"Labor Code section 1102.5 is a whistleblower statute, the purpose of which is to

encourage workplace whistle-blowers to report unlawful acts without fearing retaliation." Soukup v. Law Offices of Herbert Hafif, 39 Cal. 4th 260, 287 (2006) (internal quotations and alterations omitted). To state a claim under section 1102.5, Relator must plead a prima facie case of retaliation by showing that she (1) engaged in protected activity, (2) was thereafter subjected to adverse employment action by QAS, and (3) there was a causal link between the two. Soukup, 39 Cal. 4th at 287–88.

As to the first element, an employee engages in protected activity when she discloses "to a person with authority over the employee, or to another employee who has authority to investigate, discover, or correct the violation or noncompliance, . . . a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation . . . ." Cal. Lab. Code § 1102.5. The employee "need not prove an actual violation of law; it suffices if the employer fired [her] for reporting [her] reasonably based suspicions of illegal activity." Ferrick v. Santa Clara Univ., 231 Cal. App. 4th 1337, 1345 (2014).

Here, Relator alleges that she disclosed Glenn Russell Deacon II's practices to Susan Deacon (the protected activity) and was fired (the adverse employment action) two days later (the causal link). Thus, Relator has pled a prima facie case against QAS.

Again, however, the court must dismiss the individual defendants. And like the discussion above, this determination involves evaluating another amendment. In 2014, the California Legislature revised section 1102.5 to read: "[a]n employer or any person acting on behalf of the employer, shall not retaliate against an employee . . . ." (Emphasis added.) Before that amendment, courts reliably found that section 1102.5 precluded individual liability. See Vierria v. California Highway Patrol, 644 F. Supp. 2d 1219, 1244 (E.D. Cal. 2009) ("The relevant portions of the statute clearly indicate that [section 1102.5] is meant to establish prohibited activity by employers, rather than individuals."). Since the amendment, courts have found the same. See Tillery v. Lollis, 2015 WL 4873111, at *9 (E.D. Cal. Aug. 13, 2015) (engaging in lengthy analysis in determining that section 1102.5 does not provide for individual liability post-amendment); Vera v.

Con-way Freight, Inc., 2015 WL 1546178, at *1 (C.D. Cal. Apr. 6, 2015); Conner v. Aviation Serv. of Chevron U.S.A., 2014 WL 5768727, *5 (N.D. Cal. Nov. 5, 2014).

In addition, the California Supreme Court has come to the same conclusion when evaluating similarly worded statutes, and when interpreting state law, federal courts are bound by decisions of the state's highest court." Strother v. S. Cal. Permanente Med. Group, 79 F.3d 859, 865 (9th Cir. 1996) (internal quotation omitted). In Reno v. Baird, 18 Cal. 4th 640, 645 (1998), the court affirmed that no individual liability exists under the Fair Employment and Housing Act based on the statute's definition of "employer" to include "any person acting as an agent of an employer . . . ." In Jones v. Lodge at Torrey Pines P'ship, 42 Cal. 4th 1158, 1162 (2008), the court held that use of the word "person" in Government Code section 12940(h)—which forbids retaliation by making it unlawful for "any employer . . . or person to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part"— does not compel "the conclusion that all persons who engage in prohibited retaliation are personally liable, not just the employer." The court in Jones noted that the Legislature can signal individual liability when it means it, such as the "clear language" in Government Code section 12940(j)(3) that reads: "An employee of an entity . . . is personally liable for any harassment prohibited by this section that is perpetrated by the employee . . . ." Id. Based on Reno and Jones, the court concludes that if the California Supreme Court were ever to consider the issue, it would hold that there can be no individual liability under section 1102.5. See Strother, 79 F.3d at 865 ("If the state's highest court has not addressed the issue, the federal court must use its best judgment to predict how it would resolve the issue.").

For these reasons, the court denies Defendants' motion to dismiss Count IV as to QAS, but grants it, without leave to amend, as to Glenn Russell Deacon, Glenn Russell Deacon II, Susan Deacon, and Shelly Becker.

### 5. Violation of California Labor Code section 232.5

Count V alleges that Defendants violated section 232.5, which provides that an

employer may not discharge or otherwise discriminate against an employee who discloses information about the employer's "working conditions." The Legislature did not define the phrase "working conditions" in section 232.5, and as Defendants point out, "there is scant case law on the issue." One unpublished California Court of Appeal case, cited by Defendants, examined section 232.5 in detail. In Massey v. Thrifty Payless, Inc., 2014 WL 2901377 (Cal. Ct. App. June 27, 2014), the court stated:

> The legislative history material presented to this court includes the acknowledgment [that] 'the phrase working conditions is cited dozens of times in the Labor Code, but is not actually defined. Defining working conditions would be like defining work, each industry and profession requires various skills, protocols, attire, etc.' The material also includes the following definition: 'Working conditions are those conditions determined by the employer as a condition of employment. For example, one must wear a blue tie.'
>
> . . .
>
> Examples of working conditions provided in the legislative history material include attire, proper behavior, break room condition, elevator maintenance, seat comfort, temperature, lighting, uniforms, hair requirements, breaks, restroom facilities, and 'even one's required attitude.' In an enrolled bill report, contained within the legislative history material, working conditions are described as '(e.g., hours, workplace safety, benefits).' In an analysis from the Senate Rules Committee, the reference to working conditions is followed by '(e.g., hours, uniforms, occupation, safety).'

Id. at *5 (internal citations omitted).

Unfortunately, the court in Massey did not need to further refine the definition of "working conditions" to determine that the plaintiff's Facebook post—about getting punched by a customer while at work—did not disclose information about the employer's working conditions. Thus, like the Legislature before it, the Massey court did not nail down a definition of "working conditions." One portion of the definition is the most straightforward, however, and it guides the court here: "Working conditions are those conditions determined by the employer as a condition of employment."

13

16cv737 JM (JMA)

Under that definition, Relator has not alleged a violation of section 232.5. She does not allege that falsifying reports was a condition of her employment with QAS. She only alleges that she was asked to provide old reports. (Doc. No. 13 ¶¶ 23, 25.) She claims that those old reports could be used, and were used, to create false reports, but she does not allege that she herself was required to create these reports. (See id.) To the contrary, she alleges that the fraudulent reports were "produced by Glenn Russell Deacon II." (See id. ¶¶ 23–26.) In sum, by merely alleging that, as a condition of her employment, she was required to provide old reports to other employees, Relator has not pled a violation of section 232.5.

Accordingly, the court grants Defendants' motion to dismiss Count V with leave to amend.

### 6. Wrongful Termination in Violation of Public Policy

Relator's claim for wrongful discharge in violation of public policy requires her to prove that (1) QAS employed her, (2) QAS discharged her, (3) the alleged violation of public policy was a motivating reason for the discharge, and (4) the discharge caused her harm. Haney v. Aramark Unif. Servs., Inc., 121 Cal. App. 4th 623, 641 (2004). Regarding the third element, the public policy "must be: (1) delineated in either constitutional or statutory provisions; (2) public in the sense that it inures to the benefit of the public rather than serving merely the interests of the individual; (3) well established at the time of the discharge; and (4) substantial and fundamental." Id. at 642.

As detailed above, Relator alleges sufficient facts to support her FCA and section 1102.5 retaliation claims. Consequently, she has alleged sufficient facts to support this claim against QAS. See Mendiondo, 521 F.3d at 1105. Once again, though, the court must dismiss the individual defendants. Miklosy v. Regents of Univ. of California, 44 Cal. 4th 876, 901 (2008) (holding that a common law cause of action for wrongful termination in violation of public policy lies only against an employer).

Thus, the court denies Defendants' motion to dismiss Count VI as to QAS, but grants it, without leave to amend, as to Glenn Russell Deacon, Glenn Russell Deacon II,

Susan Deacon, and Shelly Becker.

### 7. Relator's Claim for Punitive Damages

Finally, Defendants seek dismissal of Relator's request for punitive damages on Counts III–VI. Under California law, a plaintiff may recover punitive damages in connection with a non-contractual claim if she establishes by clear and convincing evidence that the defendant is guilty of fraud, oppression, or malice. Cal. Civil Code § 3294(a).

Initially, the court notes that Relator cannot seek traditional punitive damages on Count III over and above what the FCA allows because the FCA provides its own measure of damages, see 31 U.S.C. § 3730(h)(2), which are already "essentially punitive in nature," Vermont Agency of Nat. Res. v. United States ex rel. Stevens, 529 U.S. 765, 784 (2000). Thus, the court grants Defendants' motion to dismiss Relator's request for punitive damages on that count without leave to amend.

For the reasons previously noted, the court grants Defendants' motion as to Relator's state law counts as well, but with leave to amend. While Count I involves fraud against the government, Counts IV–VI do not involve fraud—or oppression or malice— against Relator. Rather, as alleged, they involve standard violations of California statutory and common law.

### CONCLUSION

For the reasons stated, the court orders as follows.

Count I: the court grants Defendants' motion to dismiss, with leave to amend, as to Glenn Russell Deacon, Susan Deacon, and Shelly Becker, but denies it as to QAS and Glenn Russell Deacon II.

Count II: the court grants Defendants' motion to dismiss, with leave to amend, as it relates to outside entities and grants it, without leave to amend, as it relates to a conspiracy among Defendants.

Count III: the court grants Defendants' motion to dismiss, without leave to amend, as to Glenn Russell Deacon, Glenn Russell Deacon II, Susan Deacon, and Shelly Becker,

but denies it as to QAS.

Count IV: the court grants Defendants' motion to dismiss, without leave to amend, as to Glenn Russell Deacon, Glenn Russell Deacon II, Susan Deacon, and Shelly Becker, but denies it as to QAS.

Count V: the court grants Defendants' motion to dismiss with leave to amend.

Count VI: the court grants Defendants' motion to dismiss, without leave to amend, as to Glenn Russell Deacon, Glenn Russell Deacon II, Susan Deacon, and Shelly Becker, but denies it as to QAS.

The court grants Defendants' motion to dismiss Relator's claims for punitive damages, without leave to amend Count III, and with leave to amend Counts IV and VI (as well as Count V should it be re-pled).

IT IS SO ORDERED.

DATED: March 16, 2017

JEFFREY T. MILLER
United States District Judge